For D.C.F. Staff Use Only [Legal Mail]

Please Mail the following 29 Page document to the name and address listed.

**Physical Address:**

Clerk of Court, EDPa

James A. Byrne U.S. Courthouse

Room 2609

601 Market Street

Philadelphia, PA 19106

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

# UNITED STATES DISTRICT COURT

for the

Eastern  District of Pennsylvania

|  |  |
|---|---|
| Jeremy Kyle Cannafax | Case No. _____ |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint.* | |
| *If the names of all the plaintiffs cannot fit in the space above,* | |
| *please write "see attached" in the space and attach an additional* | |
| *page with the full list of names.)* | |
| –v– | |
| See Attached | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the* | |
| *names of all the defendants cannot fit in the space above, please* | |
| *write "see attached" in the space and attach an additional page* | |
| *with the full list of names. Do not include addresses here.)* | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Prisoner Complaint)

---

**NOTICE**

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

The Clerk will not file a civil complaint unless the person seeking relief pays the entire filing fee (currently $350) and an administrative fee (currently $52) in advance, or the person applies for and is granted in forma pauperis status pursuant to 28 U.S.C. § 1915. A prisoner who seeks to proceed in forma pauperis must submit to the Clerk (1) a completed affidavit of poverty and (2) a copy of the trust fund account statement for the prisoner for the six month period immediately preceding the filing of the complaint, obtained from and certified as correct by the appropriate official of each prison at which the prisoner is or was confined for the preceding six months. See 28 U.S.C. § 1915(a)(2).

If the Judge enters an order granting a prisoner's application to proceed in forma pauperis, then the order will assess the filing fee (currently $350) against the prisoner and collect the fee by directing the agency having custody of the prisoner to deduct an initial partial filing fee equal to 20% of the greater of the average monthly deposits to the prison account or the average monthly balance in the prison account for the six-month period immediately preceding the filing of the complaint, as well as monthly installment payments equal to 20% of the preceding month's income credited to the account for each month that the balance of the account exceeds $10.00, until the entire filing fee has been paid. See 28 U.S.C. § 1915(b). **A prisoner who is granted leave to proceed in forma pauperis is obligated to pay the entire filing fee regardless of the outcome of the proceeding, and is not entitled to the return of any payments made toward the fee.**

---

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

## I.   The Parties to This Complaint

### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name: Jeremy Kyle Cannafax

All other names by which you have been known: N/A

ID Number: #130340

Current Institution: Bucks County Correctional facility

Address: 1730 S. Easton Road

Doyle Stown          PA          18901
_City_                       _State_                _Zip Code_

### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

Name: See Attached

Job or Title *(if known)*:

Shield Number:

Employer:

Address:

_City_                       _State_                _Zip Code_

☐ Individual capacity   ☐ Official capacity

Defendant No. 2

Name:

Job or Title *(if known)*:

Shield Number:

Employer:

Address:

_City_                       _State_                _Zip Code_

☐ Individual capacity   ☐ Official capacity

3/25

I. Parties to this Complaint

B) Defendants

1) Bucks County of the Commonwealth of Pennsylvania

i) Suit is brought against defendants 2 through 39 at their official and their individual Capacities.

ii) The following persons are current or former employees of the Bucks County Correctional facility located at 1730 S. Easton Rd. Doylestown, PA 18901

| | |
|---|---|
| 2) Warden Matellus | 22) officer Fallon |
| 3) Deputy Warden Kelly Reed | 23) officer Leopardi |
| 4) Captain Nottingham | 24) officer J. Kasprzyk |
| 5) Lt. B. Morris | 25) officer R. Taylor |
| 6) Lt. K. Wylie | 26) officer J. mcCandless |
| 7) Lt. Clayton | 27) officer Khalil |
| 8) Lt. A. Kovach | 28) officer D. Wilt |
| 9) Lt. Hugg | 29) officer B. Burris |
| 10) Lt. M. Mander | 30) officer Stevenson |
| 11) SGt. Murphy | 31) officer F. Tucker |
| 12) SGt. Pohopin | 32) officer H. Cox |
| 13) SGt. A. Beck | 33) officer K. South |
| 14) SGt. M. Raggi | 34) officer T. Montgomery |
| 15) SGt. R. Graus | 35) officer Davenport |
| 16) SGt. Nicoletti | 36) officer Kadee |
| 17) SGt. O'donell | 37) officer Dowdy |
| 18) SGt. A. Cruz (male) | 38) Nurse Leanne |
| 19) SGt. Cruz (female) | 39) Mental health Case Manager Kim Clyde |
| 20) officer L. Moore | |
| 21) officer G. Simpson | |

Defendant No. 3
    Name _____
    Job or Title *(if known)* _____
    Shield Number _____
    Employer _____
    Address _____

          City    State    Zip Code

    ☐ Individual capacity  ☐ Official capacity

Defendant No. 4
    Name _____
    Job or Title *(if known)* _____
    Shield Number _____
    Employer _____
    Address _____

          City    State    Zip Code

    ☐ Individual capacity  ☐ Official capacity

## II.  Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.  Are you bringing suit against *(check all that apply)*:

  ☐ Federal officials (a *Bivens* claim)

  ☑ State or local officials (a § 1983 claim)

B.  Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  42 U.S.C. § 1983.  If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

U.S. Constitutional amendments I, VIII, XIV. 42 USC §2000cc-1

C.  Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights.  If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

D.   Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

<u>See Attached</u>

## III.   Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- [x] Pretrial detainee
- [ ] Civilly committed detainee
- [ ] Immigration detainee
- [ ] Convicted and sentenced state prisoner
- [ ] Convicted and sentenced federal prisoner
- [x] Other *(explain)*   Convicted and Sentenced County Prisoner as of 12/6/22

## IV.   Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.   If the events giving rise to your claim arose outside an institution, describe where and when they arose.

<u>See Attached, also See Appendix IV. §19</u>

B.   If the events giving rise to your claim arose in an institution, describe where and when they arose.

IV. Statement of Claim
              Civil Action - Law
              Jury Demanded
Plaintiff demands a full jury trial of all triable issues.

1) This is a civil action brought under 42 U.S.C. §1983 and 42 U.S.C. §2000cc-1 Pursuant to the Federal rules of Civil Procedure by Plaintiff Jeremy Kyle Cannafax to obtain Preliminary injunctive relief, injunctive relief, declaratory relief and monetary damages resulting from defendant Bucks County Department of Corrections (D.O.C.) illegal housing practices of inmates in violation of State law 61 Pa.C.S. §5901(a)(3)(b) that violated Plaintiff's U.S. Constitutional rights under Amend. I, VIII, XIV and PA Constitution Art. 1 §13, Art 1 §9 occuring at 1730 S. Easton Rd. Doylestown, PA 18901 between the dates of 7/23/22 - Present inside the Bucks County Correctional facility (BCCF) which is a municipal entity organized under the laws of Bucks county and the State of Pennsylvania.

2) On 7/23/22 Mr. Cannafax was transfered into custody at BCCF as a Pre-trial detainee.

3) During the intake process he was offered the P.P.D. test, a test used to screen for tuberculosis that involves injecting TB. Protiens into the skin.

a) Mr. Cannafax refused this test on grounds that it violated his fundementalist Christian beliefs.

4) As a result he was placed on a "medical lock" a form of administrative segregation with no medical significance.

a) He was placed on lock 7/23/22 and remains till this day.

5) He was housed in general population and shared the same breathing space as other inmates but was subjected to severe restrictions well below state standards.

6) By virtue of the staff's actions, BCCF does not consider Mr. Cannafax to be an active TB threat. Examples include but are not limited to:

a) On 12/6/22 at approx. 7:30am while being processed at reception for his trial at the Courthouse Officers Jane doe1 and Jane doe 2 asked Mr. Cannafax why he was on medical lock status, when he replied "because I refused the TB test Jane doe 2 replied "oh that's nothing" then placed him in a holding cell of approx. 45 sq ft. with ten other inmates without being given a mask. No special instructions were given to the Sheriff's who transported and housed him with the other inmates.

b) Typical of Mr. Cannafax's actions when he is allowed out of his cell, on 2/11/23 at A-17 cell from 1:00-1:30pm he was let out into general population without being required to wear a mask, he briefly conversed with other inmates, traded items with them, used the shower, used the phone, cleaned his cell and returned to his cell.

c) Around 2/9/23 Mr. Cannafax was escorted to the medical ward by officer Banda, Mr. Cannafax asked nurse Ruben "Isn't it obvious that I don't have active TB? Why can't I be placed in general population and just be labeled as latent?" Ruben replied "You obviously don't have active TB but I have no power to make that choice." Officer Banda heard this conversation.

d) Medical lock is totally without penological justification and is used solely to punish Mr. Cannafax for refusing to violate his religious beliefs.

8/25

7) B.C.C.F. Policy allows inmates on Medical lock to exit their cells once per day for 30 minutes, this is not recreational time, inmates are expected to take a shower, clean their cells and tend to other needs such as using the phone, mail drop box or taking out laundry. These guidelines are set forth in the inmate handbook.

8) The reality however, is much more restrictive, on average Mr. Cannafax is allowed out of his cell 3-4 times per week and on occasion even less (1-2).

9) Plaintiff is not alone in his treatment, at any given time on Alpha, Golf and Delta modules combined there are 15-20 inmates held in non-suicidal segregation.

a) On 2/14/23 cells locked on Golf were G-26,27,39,40,42,19,34,35.

b) Segregated inmates including Plaintiff are, according to Policy and operating procedures, repeatedly denied to exit their cells for showers or exercise and are held in their cells continuously for 48-240 hours or more by officers: L. Moore, Leopaldi, J. Kasprzyk, R. Taylor, McCandless, Khalil, Wilt, B. Burris, Lt. M. Mander Stevenson, Sgt. Cruz (male), Sgt. Cruz (female), Sgt. Nicoletti, Sgt. R. Grous, Sgt. M. Raggi, Sgt. A. Beck, Sgt. Pohopin, Sgt. Murphy, Lt. B. Morris, Lt. C. Hugg, Lt. A. Kovach, Lt. Clayton, Lt. K. Wylie, Capt. Nottingham, F. Tucker, H. Cox, Kadee, South, Davenport, Montgomery, G. Simpson, J. Fallon, Jane doe 3, Jane doe 4, Sgt. O'donell, Dowdy.

c) On or around 11/4/22 Plaintiff was transferred to Golf where he was held in 28 cell for 6 continuous days by R. Taylor and other officers, when he asked R. Taylor what time could he take a shower, the officer replied "That's a good question."

10) The vast majority of Segregated inmates held in general population blocks, Plaintiff included, receive Zero hours of exercise time per week.

a) Most are only provided with a shower 0-4 times per week and can be held in these conditions for days to months.

11) The R.H.u. (Restrictive housing unit) ward consists of 9 single cells and 11 double cells for a total capacity of 31.

a) Inmates are housed here for disciplinary reasons.

b) An inmate in R.H.u. receiving the State mandated minimum amount of exercise per week would very well be the exception rather than the rule.

c) A significant percentage of inmates with non-violent misconducts are housed in a cell with known violent inmates.

d) Some inmates are given Zero hours of exercise for days to months, the ones that are allowed exercise are afforded no more than three sessions per week each for one hour.

e) Given these assertions it is probable that no R.H.u. inmate in recent history has ever received the State mandated minimum set forth under 2009 Pa. SB11§5901 (a)(3)(b).

12) This level of deliberate abuse inflicted on Segregated inmates has persisted for years and is standard practice.

a) These occurances were not a matter of occasional deviation of guidelines due to security risks or unforseen events. Nor were they negligent actions of a few low level Correctional officers. The Scope of these actions by defendant was a deliberate, consistent and malicious facility wide policy drafted and enforced at the highest levels of the Administration.

b) An inquiry made by an inmate housed in segregation for approx. 240 continuous hours in cell G-27 on 2/15/23 at approx. 11am directed at officer B.Burris requesting a shower yielded the response, "Good luck with that".

i) This inmate was in segregation for 30 days and was only offered exercise once.

c) On 2/15/23 at 7:24pm Plaintiff in G-26 Cell asked Lt. K.Wylie how much time are the segregated inmates supposed to get outside of their cells per day/week and received the response "Mediso gets 30 minutes per day for showers and R.Hu. Status shouldn't be getting out for anything".

d) On 2/16/23 at approx. 10:42am inmate Michael Anthony Herder on R.Hu. Status in Cell G-39 who around 2/8/23 suffered a head injury requiring hospitalization as a result of being mishoused with a known violent inmate in the R.Hu. ward and has remained in his cell alone for approx. 190 continuous hours without being given any clean clothes, asked Captain Nottingham for an opportunity to take a shower. In which the Capt. replied "No you are R.Hu. Status".

e) On 2/15/23 at approx. 11am Plaintiff in G-26 Cell asked Lt. B.Morris how much time are segregated inmates supposed to receive outside of their cells per day/week, he replied "Shower and that's it" then stated "Oh, and one hour of yard" to which Plaintiff responded "but we are not getting yard at all" as Lt. B.Morris was walking away he replied "Yeah that's just how it is here".

i) Lt. B.Morris is fully aware that inmates are to be provided one hour of exercise per day and chooses to deprive them instead.

f) Plaintiff asking Officer J. Kasprzyk on 2/14/23 at approx. 4-9pm at G-26 cell how many times per week are R.H.U. Status inmates supposed to be allowed outside of their cells Yielded the response "Policy is three times per week for an hour but it only happens once or twice".

i) Plaintiff was then denied to exit his cell that day.

13) Plaintiff spends on average 166/168 hours per week locked in his cell alone, which is approx 45 sq ft. and the windows are painted over solid. In addition he is never allowed outdoors and except for a few small glimpses, he has not seen the sun directly in nearly 8 months nor has he received a single continuous hour of exercise.

14) Plaintiff is a Christian and believes that Congregation and fellowship are essential to practicing his faith.

a) Plaintiff has been prohibited from attending all Chapel services in the facility even after staff has admitted that he is no medical or security threat.

b) Plaintiff is housed on the top tier and is prohibited from talking to any inmates for religious or any other reasons due to a rule banning inmates from standing on the top tier.

c) Furthermore a rule banning note passing prevents him from having even written conversations.

d) All attempts to engage in religious Congregation that is provided to all other inmates have been stamped out.

15) Inmates that test positive for latent TB but are not considered active are placed in general population with no restrictions, defendant has offered no explaination as to why they refuse to classify Plaintiff as latent but

instead Continues to deprive him of all meaningful opportunities for exercise or to religious fellowship.

16) Attempts to raise concerns with the administration yielded the following results and retaliation.

a) In late December of 2022 Plaintiff wrote a BCCF-164 form to Deputy Warden Kelly Reed Challanging his housing status as illegal under 61 Pa.CS. §5901 (a)(3)(b) and requesting to be allowed to visit the Chapel and drug & alcohol meetings, he received no reply.

b) Between 1/1/23-1/20/23 he attempted to file a grievance with Kelly Reed through the Golf module case manager Franceone in accordance with Prison Policy. The response received by Reed via email was "You are not allowed to file a grievance about this Subject."

C) A few days later Franceone informed Plaintiff that if he did not take the TB Shot that drug & alcohol (address verification department) would refuse to Place him in a halfway house effectivly denying his Parole eligibility and forcing him to endure his living Conditions for another 15 months and rendering him homeless upon release.

d) Despite having no mental health issues or history of misconducts at BCCF without explaination, change in medical status or prior notice on 2/1/23 Plaintiff Was moved to A-17 Cell and Placed on level 2 lock (that is reserved only for inmates experiencing severe health complications or exhibiting Suicidal tendencies) where an inmate is tasked with Continuously watching Plaintiff as the light remained on 24/7.

i) Later discovered, this was authorized by nurse leanne.

ii) It is unknown who directed Leanne to do this or for what reason it was done, other than for wanton infliction of pain.

e) Between 2/6/23 - 2/10/23 Mental health case manager Kim made verbal contact with Plaintiff at A-17 Cell, when he relayed to her that he was experiencing insomnia, anxiety, high blood pressure and depression as a result of being on level 2 lock for over a week, Kim stated "Well maybe your mental health would improve if you would take the TB Shot." Plaintiff responded "Are you serious? You know that goes against my beliefs." Kim replied "Don't those religions believe in preserving life? So you should have no problem taking it."

i) Kim, a Government employee, was not only holding Plaintiff's mental health hostage but also attempted to coerce him into modifying his sincerely held religious ideals.

ii) When he asked how long he was to stay on level 2 Kim replied "Probably until you take the test." (A 6 month period) (until 6/23/24)

f) Between 2/3/23 - 2/6/23 Plaintiff was called into A-21 Cell by Nurse Oliver who informed him if he did not comply he would be placed on level one suicide watch, that entails being stripped naked, having all personal items discarded and remaining in the cell 24/7 with the light on.

i) Making verbal contact with Lt. B. Morris some time after at A-17 cell, Plaintiff asked if it was possible to be placed on suicide watch for a medical refusal. Lt. B. Morris replied "Yes you can, for non-compliance" and "That's just how it is here."

g) On 2/8/23 at approx. 10:30am at A-17 Cell Plaintiff made verbal contact with Warden Mateus where he described his situation of being on lock for over 6 months. The Warden

replied "I will follow up with Medical".

h) On 2/12/23 Plaintiff was moved off level 2 lock and back to medical lock with no explaination.

I) On 2/7/23 Plaintiff wrote a BccF-164 form to Kelly Reed claiming to be on Permanent level 2 which modified his diet to a high sodium bag meal and requested to be given a normal tray. Kelly Reed wrote a reply stating "Level 2 watches receive bag meals, if you are concerned about health/calories please write to the dispensary".

i) Reed knows the dispensary has no authority to provide Plaintiff with a tray and was aware of his Permanent level 2 status.

ii) If it weren't for the chance meeting with the warden Plaintiff would have remained on level 2, since the only way to talk to him is through the grievance process that is guarded by Kelly Reed. (That was the only time Plaintiff has ever seen Mateus)

iii) Reed chooses to reply to trivial requests while ignoring or outright denying to hear the serious ones.

j) On 2/14/23 at 11:41am at G-26 cell Plaintiff deposited a final BccF-164 form for Kelly Reed requesting a formal hearing to challange his lock status and a notice that if continued efforts to file a grievance were ignored that §1997e (b) would become valid. He received no reply.

K) In a final attempt to exhaust all administrative remedies, on 2/17/23 a summary of the entire situation along with the replies of Kelly Reed, Mateus and Franceone was mailed to the prison oversight board located at 55 E Court St, Doylestown, PA 18901 requesting a formal hearing to challange Plaintiffs lock status.

L) Outlined in the inmate handbook are the rules governing the grievance process, they state that within ten days of receiving a reply from the warden the inmate must mail all replies from the warden and his designee (Reed) to the Prison oversight board in order to receive a reply within ten days where a copy will be sent to the warden and the inmate. This is the final remedy to the grievance process.

M) In the inmate handbook under Grievance Procedure §(2)(A) it states that an inmate may not file a grievance about; Local, State and Federal laws and regulations or decisions. Despite this Plaintiff has attempted to traverse every avenue of the administration to file a grievance about a violation of State law.

N) The Prison oversight board is required by 61 Pa. C.S. §1724(d) to ensure the prison is operated according to law, despite this, the board has made no reply or inquiry into Plaintiff's illegal housing conditions. (And has failed to monitor the prison)

17) For the reasons stated in §16 of this complaint under IV Statement of Claim; Plaintiff asserts his administrative remedies are fully exhausted with no other choice but to initiate litigation before this Court.

18) Evidence for the aforementioned claims have been recorded and stored by defendant D.O.C. through documentation and video recordings held at B.C.C.F.

19) APPendix; This Section is designed to Provide a Summary reference for Claims and the underlying evidence to Support them.

a) Establishing Municipal liability; named and unnamed defendants acted on well established Policies, Customs and Standards that governed their duties as County employees and did So Continuously for years. [See IV. §4,5,7,8,9(b)(c),10(a),11(b)(d)(e),12(a)(b)(c)(d)(e)i)(f)]

b) Count I US. Const. Amend. I Religious freedom [See IV. §14(a)(b)(c)(d),16(e)i)] Retaliation [See IV. §16(e)(d)(e)ii)(f)i)]

C) Count II US. Const. Amend. VIII Cruel and unusual Punishment [See IV. §8,9(b)(c),10,13,15,16(c)(d)(e)ii)(f)i)]

d) Count III US. Const. Amend. XIV due Process [See IV. §16(j)(k)(n)]

e) Count IV PA Const. Art. 1 §13 Cruel Punishments [See IV. §8,9(b)(c),10,13,15,16(c)(d)(e)ii)(f)i)]

f) Count V PA Const. Art 1 §9 due Process [See IV. §16(j)(k)(n)]

g) Count VI Municipal tort Claim 61 Pa.C.S. §5901(a)(3)(b) Confinement duration [See IV. §13]

h) Count VII Municipal tort Claim 61 Pa.C.S. §1724(d) Oversight deliberate indifference / willfull misconduct [See IV. §16(k)(n)]

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

C.     What date and approximate time did the events giving rise to your claim(s) occur?

D.     What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what? Was anyone else involved?  Who else saw what happened?)*

## V.     Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

See Attached

## VI.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

See Attached

# V. Injuries

18/25

1) Injuries Sustained:

a) Muscular atrophy

i) Difficulty walking otherwise normal distances.

ii) Difficulty climbing stairs without muscle pains.

b) Severe headaches

i) Lasting hours to days.

c) High blood pressure and abnormally high heart rate

i) Constant fatigue.

d) Insomnia

e) Frequent anxiety attacks and nose bleeds

2) Future injuries that can result from total sunlight (vitamin D) deprivation and prolonged sedentary lifestyles: Cancer, heart disease, M.S., Osteoperosis and immunological disorders.

3) Emotional injuries: feelings of hopelessness, mood swings of anger and depression, constant fear of retaliation, uncontrollable outbursts of crying/screaming.

4) Treatment offered:

a) After acknowledging my high blood pressure and heart rate the medical staff offered medication as a remedy instead of taking me off lock. I refused all medication on religious grounds.

b) The mental health staff offered worksheets (to keep me busy?) Clearly a worthless remedy that was refused.

c) The only viable remedy is to remove me from my lock and to stop causing my injuries.

VI. Relief

19/25

1) Preliminary injunctive relief sought on all counts I-VII: to be allowed one hour of exercise five days per week outside of the cell required by state law.

2) Injunctive relief sought on all counts I-VII: to be removed permanently from medical lock.

3) Declaratory relief sought on all counts I-VII: to be removed from segregation and not allowed to be placed back in segregation without due process.

4) Monetary relief sought for actual damages outlined in V. §1-3 on counts I, II, III, VI, VII in the amount of $45,000.⁰⁰

5) Monetary relief sought for punitive damages from defendants named in I(b) § 2 through 39 on counts I, II, III, VI, VII for deliberate indifference/malicious intent in the amount of $50.⁰⁰ tolled for every day that Plaintiff was held on medical lock, without being afforded one hour of exercise five days per week required by 61 Pa. C.S. §5901

6) Along with interest, costs of suit and reasonable attorney's fees.

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

## VII.   **Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.   Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Bucks County Correctional facility

B.   Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑ Yes

☐ No

☐ Do not know

C.   Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☐ Yes

☑ No

☐ Do not know

If yes, which claim(s)?

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☑ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☐ No

E.    If you did file a grievance:

1.    Where did you file the grievance?

Bucks County Prison oversight board

2.    What did you claim in your grievance?

3.    What was the result, if any?

4.    What steps, if any, did you take to appeal that decision?  Is the grievance process completed?  If not, explain why not.  *(Describe all efforts to appeal to the highest level of the grievance process.)*

See Attached IV. §17

F.    If you did not file a grievance:

    1.    If there are any reasons why you did not file a grievance, state them here:

    2.    If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

*(Note:  You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.  Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☑ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights)

A.     Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☑ No

B.     If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

      1.    Parties to the previous lawsuit

         Plaintiff(s) _____

         Defendant(s) _____

      2.    Court *(if federal court, name the district; if state court, name the county and State)*

         _____

      3.    Docket or index number

         _____

      4.    Name of Judge assigned to your case

         _____

      5.    Approximate date of filing lawsuit

         _____

      6.    Is the case still pending?

         ☐ Yes

         ☐ No

         If no, give the approximate date of disposition. _____

      7.    What was the result of the case? *(For example: Was the case dismissed?  Was judgment entered in your favor?  Was the case appealed?)*

         _____

C.     Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

☐ Yes

☑ No

D.     If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.  Parties to the previous lawsuit
    Plaintiff(s)  _____
    Defendant(s)  _____

2.  Court *(if federal court, name the district; if state court, name the county and State)*

    _____

3.  Docket or index number

    _____

4.  Name of Judge assigned to your case

    _____

5.  Approximate date of filing lawsuit

    _____

6.  Is the case still pending?

    ☐ Yes

    ☐ No

    If no, give the approximate date of disposition  _____

7.  What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

    _____

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

## IX.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   _3/22/23_

Signature of Plaintiff   _Jerald K Cannafax_
Printed Name of Plaintiff   _Jeremy Kyle Cannafax_
Prison Identification #   _130340_
Prison Address   _1730 S. Easton Rd._
_Doylestown_          _PA_      _18901_
                City                    State        Zip Code

### B.   For Attorneys

Date of signing:   _____

Signature of Attorney   _____
Printed Name of Attorney   _____
Bar Number   _____
Name of Law Firm   _____
Address   _____
_____
                City                    State        Zip Code

Telephone Number   _____
E-mail Address   _____

Page 11 of 11

Jeremy Cannafax
#130340/
1730 S. Easton Rd.
Doylestown, PA 18901

 

U.S. POSTAGE PAID
PCW US ENV
DOYLESTOWN, PA
18901
MAR 28 23
AMOUNT
$2.46
R2303S100575-08

RDC 99          19106

Clerk of Court, ED Pa
James A. Byrne US Courthouse
Room 2609
601 Market St.    U.S.M.S.
Philadelphia, PA 1910X-RAY

MAR 31 2023