E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights     *Amended Complaint*     1/34

# UNITED STATES DISTRICT COURT

for the

Eastern  District of Pennsylvania

| | |
|---|---|
| **Jeremy Kyle Cannafax** <br> *Plaintiff(s)* <br> *(Write the full name of each plaintiff who is filing this complaint.* <br> *If the names of all the plaintiffs cannot fit in the space above,* <br> *please write "see attached" in the space and attach an additional* <br> *page with the full list of names.)* <br> –v– <br><br> **See Attached** <br> *Defendant(s)* <br> *(Write the full name of each defendant who is being sued.  If the* <br> *names of all the defendants cannot fit in the space above, please* <br> *write "see attached" in the space and attach an additional page* <br> *with the full list of names.  Do not include addresses here.)* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No.  **23–1274** <br> *(to be filled in by the Clerk's Office)* |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Prisoner Complaint)

---

**NOTICE**

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

The Clerk will not file a civil complaint unless the person seeking relief pays the entire filing fee (currently $350) and an administrative fee (currently $52) in advance, or the person applies for and is granted in forma pauperis status pursuant to 28 U.S.C. § 1915.  A prisoner who seeks to proceed in forma pauperis must submit to the Clerk (1) a completed affidavit of poverty and (2) a copy of the trust fund account statement for the prisoner for the six month period immediately preceding the filing of the complaint, obtained from and certified as correct by the appropriate official of each prison at which the prisoner is or was confined for the preceding six months.  See 28 U.S.C. § 1915(a)(2).

If the Judge enters an order granting a prisoner's application to proceed in forma pauperis, then the order will assess the filing fee (currently $350) against the prisoner and collect the fee by directing the agency having custody of the prisoner to deduct an initial partial filing fee equal to 20% of the greater of the average monthly deposits to the prison account or the average monthly balance in the prison account for the six-month period immediately preceding the filing of the complaint, as well as monthly installment payments equal to 20% of the preceding month's income credited to the account for each month that the balance of the account exceeds $10.00, until the entire filing fee has been paid.  See 28 U.S.C. § 1915(b). **A prisoner who is granted leave to proceed in forma pauperis is obligated to pay the entire filing fee regardless of the outcome of the proceeding, and is not entitled to the return of any payments made toward the fee.**

2/34

Jeremy Kyle Cannafax
Plaintiff
-V-

Bucks County of the Commonwealth of Pennsylvania,
Matellus, Kelly Reed, Nottingham, B. Morris, K. Wylie,
M. Clayton, A. Kovach, C. Hugg, M. Mander, C. Brown,
N. Minasian, Murphy, Pohopin, A. Beck, M. Raggi, R. Grous,
Nicoletti, O'donell, A. Cruz, N. Cruz, L. Moore, G. Simpson,
J. Fallon, Leopardi, J. Kasprzyk, R. Taylor, J. McCandless,
Khalil, D. Wilt, B. Burris, Stevenson, F. Tucker, H. Cox,
K. South, T. Montgomery, D. Davenport, Kadee, T. Dowdy,
Leanne, Kim Clyde
Defendants

Jury Demanded
Plaintiff demands a jury trial of all triable issues.

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

## I.   The Parties to This Complaint

### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name — *Jeremy Kyle Cannafax*

All other names by which you have been known:

ID Number — 130-340

Current Institution — Bucks County Correctional Facility

Address — 1730 S. Easton Road

Doylestown          PA          18901
*City*                    *State*              *Zip Code*

### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

Name — See Attached

Job or Title *(if known)*

Shield Number

Employer

Address

_____ _____ _____
*City*                    *State*              *Zip Code*

☐ Individual capacity          ☐ Official capacity

Defendant No. 2

Name

Job or Title *(if known)*

Shield Number

Employer

Address

_____ _____ _____
*City*                    *State*              *Zip Code*

☐ Individual capacity          ☐ Official capacity

I. Parties to this Complaint
B) Defendants
1) Bucks County of the Commonwealth of Pennsylvania
i) The following persons are current or former employees of the Bucks county Correctional Facility located at:
1730 S. Easton Road Doylestown, PA 18901
ii) The following persons are Sued at individual capacity:

2) Warden Matellus
3) Deputy Warden Kelly Reed
4) Captain Nottingham
5) Lt. B. Morris
6) Lt. K. wylie
7) Lt. M. Clayton
8) Lt. A. Kovach
9) Lt. C. Hugg
10) Lt. M. Mander
11) Lt. C. Brown
12) Lt. N. Minasian
13) SGT. Murphy
14) SGT. Pohopin
15) SGT. A. Beck
16) SGT. M. Raggi
17) SGT. R. Grous
18) SGT. Nicoletti
19) SGT. O'donell
20) SGT. A. Cruz
21) SGT. N. Cruz
22) L. Moore, Officer

23) officer G. Simpson
24) officer J. Fallon
25) officer LeoPardi
26) officer J. KasPrzyk
27) officer R. Taylor
28) officer J. McCandless
29) officer Khalil
30) officer D. wilt
31) officer B. Burris
32) officer Stevenson
33) officer F. Tucker
34) officer H. Cox
35) officer K. South
36) officer T. Montgomery
37) officer D. DavenPort
38) officer Kadee
39) officer T. Dowdy
40) Nurse Leanne
41) Mental Health Case Manager Kim Clyde

Defendant Bucks County of the Commonwealth of Pennsylvania Shall be Served at:

Robert J. Harvie JR
Commissioners Office
100 N Main Street
Doylestown, PA 18901

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

Defendant No. 3
    Name                                 _____
    Job or Title *(if known)*       _____
    Shield Number             _____
    Employer                  _____
    Address                    _____

                                *City*           *State*          *Zip Code*
                         ☐ Individual capacity     ☐ Official capacity

Defendant No. 4
    Name                                 _____
    Job or Title *(if known)*       _____
    Shield Number             _____
    Employer                  _____
    Address                    _____

                                *City*           *State*          *Zip Code*
                         ☐ Individual capacity     ☐ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

    A.    Are you bringing suit against *(check all that apply)*:

        ☐ Federal officials (a *Bivens* claim)

        ☑ State or local officials (a § 1983 claim)

    B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983.  If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

U.S. Constitution Amendments I, VIII, XIV

    C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights.  If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

D.     Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

_See Attached_

## III.   Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- [x] Pretrial detainee
- [ ] Civilly committed detainee
- [ ] Immigration detainee
- [ ] Convicted and sentenced state prisoner
- [ ] Convicted and sentenced federal prisoner
- [x] Other *(explain)*   _Convicted and Sentenced County Prisoner as of 12/6/22_

## IV.   Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.     If the events giving rise to your claim arose outside an institution, describe where and when they arose.

B.     If the events giving rise to your claim arose in an institution, describe where and when they arose.

_See Attached_

# IV. Statement of Claim

1) Preliminary Statement and background information
a) This is a civil rights action brought under 42 USC. § 1983 and 42 USC. §§ 2000cc-1 -2000cc-5 Pursuant to the Federal Rules of Civil Procedure by Plaintiff Jeremy Kyle Cannafax to obtain Preliminary injunctive relief, Declaratory relief, injunctive relief and monetary damages resulting from defendants illegal housing Practices of inmates in violation of State law 61 Pa. C.S. § 5901 (a)(3)(b) that violated Plaintiff's U.S. Constitutional rights under Amendments I, VIII, XIV and PA Constitution Art.1 § 13, Art.1 § 9 occuring at 1730 S. Easton Road Doylestown, PA 18901 between the dates of 7/23/22 - Present inside the Bucks County Correctional Facility (B.C.C.F.) which is a municipal entity organized under the laws of Bucks County and the State of Pennsylvania.
b) On 7/23/22 Plaintiff was transfered into custody at B.C.C.F. as a pre-trial detainee.
c) During the intake process he was offered the P.P.D. test, a tuberculosis screening test that involves injecting tubercular protiens into the skin.
i) Plaintiff refused this test on grounds that it violated the tenets of his fundementalist Christian beliefs.
d) As a result he was placed on a "medical lock" a form of administrative segregation with no medical significance
i) He was placed on lock 7/23/22 and remains till this day.

e) He was housed in general population and shared the same breathing space as all other inmates but was subjected to severe restrictions well below state standards.

f) Official B.C.C.F. policy allows inmates on medical lock to exit their cells once per day for 30 minutes, this is not recreational time, according to the inmate handbook inmates are expected to take a shower, take out laundry and clean their cells on a regular basis.

g) The practice of this policy is much more restrictive, on average Plaintiff is allowed out of his cell 3-4 times per week and on occasion 1-2 times per week.

h) Plaintiff spends on average 166/168 hours of the week locked in his cell alone, which is approximately 45 sq ft. and furnished with a bunk bed, chair, table, sink and a toilet that leaves around 30 sq ft. of open space. Plaintiff's cell windows are painted over solid and he is never allowed outdoors, except for a few minor glimpses he has not seen the sun directly since 7/23/22 nor has he received a single continuous hour of exercise, except for one instance.

i) After 264 consecutive days without exercise, on 4/14/23 Plaintiff was escorted to the outdoor R.H.U. yard and placed in a 50 sq ft. cage for one hour.

ii) Plaintiff has not received exercise since.

2) Count 1 U.S. Constitution Amendment I (Rluipa Claim)
a) In the inmate handbook under §B(6) it states that all inmates have the right to practice their religion and §O(1) states weekend group worship services are available to all inmates. Despite this, B.C.C.F. Policy has prohibited Plaintiff from attending all church services forcing him to violate the tenets of his religion.

b) Plaintiff is an Amish convert and does not believe in taking modern medicine for non-life threatening/diagnostic purposes including vaccines and the P.P.D. shot.

c) Plaintiff believes that congregation and fellowship are essential to practicing his faith.

d) Plaintiff is housed on the top tier and is prohibited from talking to other inmates for religious reasons due to a rule banning inmates from standing on the top tier.

e) Furthermore, a rule banning note passing prohibits even written conversations for religious reasons.

f) All attempts to engage in religious congregation have been stamped out by B.C.C.F. officers.

g) While housed on Alpha module from 8/5/22 - 11/4/22 Plaintiff repeatedly asked Case Manager John doe 1 to sign him up for weekend church, the reply received was "Sorry man, you can't go while on lock."

i) On 4/9/23 at 10:54pm at G-26 Cell Case Manager Ricci gave Plaintiff a written reply to his request to be signed up for weekend church that stated "Unfortunately not while you are on medical lock"

3) Count 11 U.S. Constitution Amendment I (Retaliation)

a) Nurse Leanne, Kim Clyde and Lt. B. Morris launched a Campaign of harrassment against Plaintiff from 2/1/23 to 2/12/23 for his attempt to file a grievance around 1/20/23.

b) Despite having no history of mental health issues or Misconducts at BCCF without explaination, Change in Medical Status or Prior notice on 2/1/23 Plaintiff was Moved to A-17 Cell and Placed on a "Level 2 lock" (that is reserved only for inmates experiencing severe health Complications or exhibiting suicidal tendencies) where an inmate was tasked with Continuously watching Plaintiff while the Cell light remained on at all times.

i) Around 2/20/23 Plaintiff asked Nurse Jane Doe 1 who Placed him on Level 2 and for what reason and received the reply "It says in the computer Leanne authorized it, in the notes section there is no reason given."

ii) Everyday that Plaintiff was on Level 2 lock officers and nursing staff would come to Plaintiff's Cell and ask him "Have you had enough yet? Are you ready to take the shot?"

C) Between 2/3/23 - 2/6/23 Plaintiff was called into A-21 Cell by Nurse Oliver who informed Plaintiff that if he did not take the P.P.D. Shot he would be Placed on a Level 1 Suicide watch that entails being Stripped naked, having all Personal items discarded including religious texts while remaining in the Cell at all times with the Cell light on and only being Provided with 4 items: toilet Paper, a Matress and an anti-Suicide Smock and blanket.

d) Making verbal contact with Lt. B. Morris around 2/4/23 - 2/7/23 at A-17 cell Plaintiff asked if it was possible to be placed on suicide watch for a medical refusal. Lt. B. Morris replied "Yes you can for non-compliance" and "That's just how it is here."

e) Between 2/6/23 - 2/10/23 Mental health case manager Kim clyde made verbal contact with Plaintiff at A-17 cell, when Plaintiff relayed to Kim that he was feeling sick and was experiencing symptoms of insomnia, anxiety, hypertension and depression as a result of being on Level 2 lock for over a week, Kim replied "Well maybe your mental health would improve if you would take the TB shot" Plaintiff responded "Are you serious? You know that goes against my beliefs" Kim replied "Don't those religions believe in preserving life? So you should have no problem taking it."

i) Plaintiff then asked Kim how long would he stay on level 2, Kim replied "Probably until you take the test" implying that he would stay on Level 2 until his max-out date (6/23/24).

ii) Kim, a government employee, was not only holding Plaintiff's mental health hostage but attempted to coerce him into violating his sincerly held religious beliefs with the scare tactic of being forced to endure the extreme burden of staying on Level 2 for another 16 months.

4) Count III U.S. Constitution Amendment VIII Cruel and Unusual
Defendants L. Moore, Leopardi, J. Kasprzyk, McCandless,
Nottingham, B. Morris, K. Wylie, M. Clayton, A. Kovach, C. Hugg,
M. Mander, C. Brown, N. Minasian, Murphy, Pohopin, A. Beck,
M. Raggi, R. Grous, Nicoletti, O'donell, A. Cruz, N. Cruz,
G. Simpson, J. Fallon, R. Taylor, Khalil, D. Wilt, B. Burris,
Stevenson, F. Tucker, H. Cox, K. South, T. Montgomery,
D. Davenport, Kadee, T. Dowdy were Module officers,
fill ins for module officers or Module Supervisors
who patrolled, in person, (dates approximate) Modules
Delta from 7/23/22 - 8/5/22, Alpha from 8/5/22 -
11/4/22 and 2/1/23 - 2/13/23, Golf from 11/4/▓▓▓▓22 -
2/1/23 and 2/13/23 - Present   that directly Prohibited
Plaintiff from exiting his cell for any reason other
than to visit his attorney, visit the courthouse, visit
the medical ward and to take a Shower for 30 minutes
Per day at an average of 4 days per week.
a) Plaintiff was locked in his cell for 48-144 continuous
hours on a regular basis, every example would be too
numerous to list in this complaint.
i) Around 11/4/22 Plaintiff was transfered to Golf and
was locked in G-28 cell for 6 continuous days by
R. Taylor and other officers, when Plaintiff asked R. Taylor
what time he could take a Shower, Taylor replied
"That's a good question".
ii) Kasprzyk locked Plaintiff in G-26 cell for 96 continuous
hours from 3/20/23 - 3/24/23 and told Plaintiff to "hurry
up" on 3/24/23 and was only given 15 minutes to shower.

b) Warden Matellus directly Prohibited Plaintiff from exiting his Cell on 2/8/23 and Chose to keep Plaintiff on Medical lock indefinitely, despite directly observing the illegal conditions of Plaintiff's confinement and the illegitimate reason behind his medical lock.

i) At A-17 Cell on 2/8/23 at approximately 10:30am Plaintiff made verbal contact with Matellus where he described his Situation of being on lock for over 6 months. Matellus responded that "There is probably a medical reason you are on lock" Plaintiff explained that there was no reason. Matellus replied "I will follow up with medical" and walked away.

ii) Plaintiff has remained on medical lock.

c) Kelly Reed was made directly aware of Plaintiffs Situation around 1/20/23 by Case Manager Franceone.

i) Reed's response to this information was to inform Franceone that Plaintiff must not be allowed to file a grievance about this and that she would take no action in helping Plaintiff.

d) Kim Clyde ignored Plaintiff's Pleas for help once a week for months.

e) Listing every single instance where every single defendant disregarded Plaintiff's every Plea to be allowed exercise in order to stop causing the injuries listed in [V.§1,§3] would easily double or triple the size of this complaint and is not included.

i) Typical of all responses received, on 3/23/23 7:21am at 6-26 Lt. M. Clayton told Plaintiff "You can't go to yard on medIso". Sgt. A. Beck on 4/12/23 at ~6-8pm 6-26 told Plaintiff "Talk to 6-2 Shift" despite Yard being held on Beck's 2-10 Shift every Single day.

On Delta, Alpha and Golf between 7/23/22 and the filing of this complaint: L. Moore "You need to talk to a supervisor about that not me" G. Simpson "That sounds like a medical issue, you should take it up with the dispensary" Kadee "Talk to a white shirt" Dowdy "Talk to medical" Nottingham "Your best bet is writing Reed at inmate services" B. Burris "Can't let you out on mediso" PohoPin "You can't go to yard until you come off mediso" Minasian "You aren't coming out until you are medically cleared" Raggi "You keep refusing medical so that's on you, you can try writing Reed"

ii) Plaintiff eventually gave up hope once it became clear staff would not deviate from policy to provide Plaintiff with exercise and stop causing his injuries.

f) Defendants listed in [IV.§4] are responsible for ensuring Plaintiff and other inmates are being housed in safe/legal conditions and are not being injured.

i) This is done by directly observing the inmate in their cell and then scanning the QR code located directly on the inmates cell or on the wall near the inmates cell thus acknowledging the inmate is safe and is not being injured.

ii) Each Defendant listed in [IV.§4] scanned the QR code for Plaintiff's cell while at the same time ignoring his pleas that he was sustaining injuries from not being allowed an adequate amount of time to exercise outside of his cell.

5) Count IV U.S. Constitution Amendment XIV due Process

a) Defendants Matellus, Kelly Reed, Nottingham, B. Morris, K. Wylie, M. Clayton, A. Kovach, C. Hugg, M. Mander, C. Brown, N. Minasian, Murphy, Pohopin, A. Beck, M. Raggi, R. Graus, Nicoletti, O'donell, A. Cruz, N. Cruz, L. Moore, G. Simpson, J. Fallon, Leopardi, J. Kasprzyk, R. Taylor, J. McCandless, Khalil, D. Wilt, B. Burris, Stevenson, F. tucker, H. Cox, K. South, T. Montgomery, D. Davenport, Kadee, T. Dowdy locked Plaintiff in his cells on Delta, Alpha and Golf modules from 7/23/22 - 12/6/22 in the deplorable conditions described in [IV. §1(h)] as a Pre-trial detainee.

b) After Plaintiff's conviction on 12/6/22 he was denied the opportunity to have a hearing to challange his lock status in neither a formal or informal capacity.

c) On 2/14/23 at 11:41am at G-26 Cell Plaintiff deposited a B.CCF-164 form addressed to Kelly Reed requesting a hearing to challange his lock status and a notice that if continued efforts to file a grievance were ignored/denied that §1997(e)(b) would become valid.

i) Plaintiff received no reply from Reed.

[Correction to §5(c) above: §1997e(b)]

d) On 2/17/23 Plaintiff mailed the Prison oversight board explaining his situation and requesting a formal hearing to challange his lock status.

i) On 4/14/23 Sara Webster denied the hearing request.

6) Count V PA Constitution Article 1 §13 Cruel Punishment
Defendants listed in [IV. §5(a)] directly refused to unlock
Plaintiff's Cell door on Golf and Alpha modules after his
Conviction and Sentencing on 12/6/22 except for 30 minutes
4 times per week to Shower/clean his cell, depriving
Plaintiff of all meaningful opportunities for exercise.

7) Count VI PA Constitution Article 1 §9 Deprivation of Liberty
Defendants listed in [IV. §5(a)] Subjected Plaintiff
to illegal housing Conditions as a Pre-trial detainee on
Delta, Alpha and Golf modules from 7/23/22 - 12/6/22
and deprived him of a due Process hearing after his
Conviction and Sentencing on 12/6/22.

8) Count VII Municipal tort claim 61 Pa.C.S. §5901(a)(3)(b)
Defendants listed in [IV. §5(a)] Carried out illegal Policies
on Plaintiff and hundreds of inmates over several years.

9) Count VIII Municipal tort claim 61 Pa.C.S. §1724(d)
The Bucks County Prison oversight board approved of
illegal Policies that Subjected hundreds of inmates to
Conditions well below State Standards for a Period in
excess of three years. See [IV. §10]

10) Municipal liability (Monell claim)

The Bucks County Prison oversight board acting as the final Policymaker for the Bucks County Department of Corrections under authority of State laws 61 Pa.C.S. §§ 1721-1728 approved of Policies that directly caused Plaintiff's constitutional injuries while he was housed at the Bucks County Correctional Facility.

a) Three main Policies/customs were approved by the B.C.P.O.B. and leveraged by Staff members at B.C.C.F. to violate the rights of hundreds of inmates over the coarse of several years, they are:

i) Indefinite non-medical Segregation for TB refusals.

ii) Affording Segregated inmates 30 minutes of time outside of their cells per day.

iii) Refusing to provide inmates on disciplinary restrictions with the State mandated minimum amount of exercise.

b) At any given time on Alpha, Delta and Golf modules combined there are 15-25 housed in Segregation.

i) On 2/14/23 cells locked on Golf, G-26,27,39,40,42,19,34,35 were receiving Zero hours of exercise time per week.

ii) Most of these inmates are Provided with only a shower and are housed in these conditions for days to months.

c) The R.H.U. (Restrictive Housing unit) consists of 9 single cells and 11 double cells for a total capacity of 31.

i) Inmates are housed here for disciplinary reasons.

ii) A Significant percentage of inmates with non-violent misconducts are housed in a cell with known-violent inmates.

iii) Some R.Hu. inmates are given zero hours of exercise for days to months, the ones that are allowed exercise are given no more than three sessions per week each for one hour on monday, wednesday and friday.

d) An inquiry made by an inmate housed in segregation for approximately 240 continuous hours in Cell G-27 on 2/15/23 at approx. 11am directed at officer B. Burris requesting a shower yielded the response, "Goodluck with that."

i) This inmate was housed in segregation for 30 days and was only offered exercise once.

e) On 2/15/23 at 7:24 pm Plaintiff in G-26 Cell asked Lt. K. Wylie how much time are the segregated inmates supposed to get outside of their cells per day/week and received the response "Mediso gets 30 minutes per day for showers and R.Hu. status shouldn't be getting out for anything."

f) On 2/16/23 at approx. 10:42am inmate Michael Anthony Herder on R.Hu. status in Cell G-39 who around 2/8/23 suffered a head injury requiring hospitalization as a result of being mishoused with a known-violent inmate in the R.Hu. ward and has remained in his cell alone for approx. 190 continuous hours without being given any clean clothes or soap, asked Captain Nottingham for an opportunity to take a shower. To which the Captain replied "No you are R.Hu. status."

i) The Captain then walked away.

g) On 2/15/23 at approx. 11am Plaintiff in 6-26 Cell asked Lt. B. Morris how much time are segregated inmates supposed to receive outside of their cells per day/week, the Lt. replied "Shower and that's it" then stated "Oh, and one hour of yard" to which Plaintiff responded "But we are not getting yard at all" as Lt. B. Morris was walking away he replied "Yeah that's just how it is here".

i) Lt. B. Morris is fully aware that inmates are to be provided with one hour of exercise per day but chooses to deprive them of all exercise instead.

h) Plaintiff asking officer J. Kasprzyk on 2/14/23 at approx. 4-9pm at 6-26 Cell how many times per week are R.H.U. status inmates supposed to receive outside of their cells for exercise yielded the response, "Policy is three times per week for an hour but it only happens once or twice."

i) Plaintiff was then denied to exit his cell that day.

ii) Plaintiff was housed at B.C.C.F. from approx. 8/20/20 – 9/16/20 and 12/3/21 – 4/1/22 and directly observed the same housing policies/customs of segregated inmates taking place during those times.

11) Indefinite Non-Medical Segregation for TB refusals
B.C.C.F never treated Plaintiff as a Possible Source of
Contagion as he was never Placed in respiratory isolation.
a) Plaintiff was Placed on "Medical isolation" Where he was
housed in general Population modules Delta, Alpha and Golf
and was allowed to Share the Same breathing Space as
other inmates and Staff.
i) Plaintiff had direct contact with inmates for the 30 minutes
he was allowed out per day and was called to walk down to
the medical ward everyday to Sign a "Refusal Paper" Where
he was around inmates and Staff on the module, in the
hallways and in the medical ward.
b) "Medical isolation" is nothing more than administrative
Segregation which is a form of Punishment.
i) Inmates that test Positive for active TB are Placed in a
hospital Setting on respiratory isolation.
ii) Inmates that are deemed to be latent (not active) are
Placed in general Population with no restrictions.
C) B.C.C.F. does not consider Plaintiff to be TB active.
d) On 12/6/22 at approx. 7:30am while being Processed
at reception for his trial at the Courthouse Officers
Jane doe 2 and Jane doe 3 asked Plaintiff Why he
Was on medical lock Status, When he replied "because
I refused the TB test" Jane doe 2 replied "Oh that's nothing"
then Placed him in a holding cell of approx. 45 sq ft. with
ten other inmates without being given a mask. No Special
instructions were given to the Sheriffs who transported
and housed him with the other inmates.

e) On 2/11/23 at A-17 Cell from 1:00-1:30 Pm Plaintiff was let out into general Population without being required to wear a mask, he briefly Conversed with other inmates, traded items with them, used the Shower, used the Phone, cleaned his cell and returned to his cell.

f) Around 2/9/23 Plaintiff was escorted to the medical ward without a mask by officer Bunda, Plaintiff asked Nurse Ruben "Isn't it obvious I don't have active TB? Why Can't you just lable me as latent?" Ruben replied "I'm not trying to give you the spin move but I have no authority to make that choice." Officer Bunda heard this conversation.

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

C.    What date and approximate time did the events giving rise to your claim(s) occur?

_____

D.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

_____

## V.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

See Attached
_____

## VI.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

See Attached
_____

## V. Injuries

1) Physical injuries

a) Muscular Atrophy (loss of ten pounds of muscle tissue)

i) Difficulty walking normal distances.

ii) Difficulty climbing stairs without muscle pain.

b) Severe headaches lasting hours to days.

c) Hypertension, Tachycardia, Constant fatigue, Insomnia.

d) Frequent Anxiety Attacks and Nose bleeds.

2) Future injuries that could result from total sunlight (vitamin D) deprivation and prolonged sedentary lifestyles: Cancer, heart disease, M.S., Osteoperosis, immunological disorders.

3) Emotional injuries: feelings of hopelessness, mood swings of anger and depression, constant fear of retaliation, uncontrollable outbursts of crying/screaming, anxiety from being constantly pressured to violate religious beliefs.

4) Treatment offered: Medical staff offered blood pressure medication that was refused on religious grounds. After pleading with staff to administer a sputum test from 7/23/22, for the first time on 12/28/22 staff offered the alternative of an X-ray or blood draw that was refused on religious grounds. On 4/7/23 at 11:07am at G-26 Cell Plaintiff again requested a non-invasive sputum test from Dr. Katie who replied "I'll double check but I'm pretty sure we don't offer that here."

a) Medical staff has repeatedly denied Plaintiff a sputum culture test which is the least restrictive and most effective method of testing for TB that conforms with Plaintiffs religious beliefs.

24/34

# VI. Relief

1) Preliminary injunctive relief sought on all counts I-VIII: To be removed permanently from Medical lock.

2) Injunctive relief sought on all counts I-VIII: Prohibiting defendants from housing Plaintiff on Medical lock without a valid Medical diagnosis.

3) Declaratory relief sought on all counts I-VIII: To be removed from Segregation and not allowed to be placed back in Segregation without due process.

4) Monetary relief sought for actual damages outlined in [V. §1-3] on counts I, II, III, IV, VII, VIII in the amount of $45,000.00

5) Monetary relief sought for Punative damages from defendants named in [I.(B) §2-41] on counts II, III, IV, VII in the amount of $50.00 tolled for every day since 7/23/22 that Plaintiff was held on Medical lock without being afforded the State Mandated Minimum amount of exercise outlined under 61 Pa. C.S. §5901 (a)(3)(b)

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

## VII.   Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.      Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Bucks county Correctional Facility

B.      Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑ Yes

☐ No

☐ Do not know

C.      Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☐ Yes

☑ No

☐ Do not know

If yes, which claim(s)?

D.      Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☐ Yes

☑ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☑ No

E.      If you did file a grievance:

1.   Where did you file the grievance?

2.   What did you claim in your grievance?

3.   What was the result, if any?

4.   What steps, if any, did you take to appeal that decision?  Is the grievance process completed?  If not, explain why not.  *(Describe all efforts to appeal to the highest level of the grievance process.)*

## VII. Exhaustion of Administrative Remedies

B.C.C.F. has failed to offer an available remedy to Plaintiff. B.C.C.F. inmate handbook 2020, which is the current version of the handbook available to all inmates via the inmate tablets, States under Grievance Procedure §2(A) that an inmate may not file a grievance about; Local, State and Federal laws and regulations or decisions. Despite this Plaintiff has attempted to traverse every avenue available to file a grievance about a violation of State law.

a) The handbook under Written Grievance States "After an inmate has exhausted the informal resolution Process and is not Satisfied with that level's decision, a written grievance may be initiated." and that "Forms are available through your Case Manager."

b) Plaintiff first initiated the informal Process around 12/20/22 by Sending a BccF-164 form to Deputy Warden Kelly Reed Challenging his housing Conditions as illegal and requesting to be allowed to visit Church and drug and alcohol meetings.

i) Plaintiff received no reply from Reed.

C) From 1/1/23 - 1/15/23 Plaintiff Submitted multiple requests to his Case manager Franceone to initiate the Written grievance Process and to obtain a grievance form.

i) Franceone replied to Plaintiff's requests by Saying "I need to email Reed first" in order to "See What She Says about this"

d) Around 1/15/23 at G-28 Cell Franceone verbally informed Plaintiff that "I can't give you a form Reed emailed me back and Said that you are not allowed to file a grievance about anything related to Medical."

e) Around 2/5/23 Plaintiff again initiated the informal Process, this time by verbally expressing his concerns with SGT. Murphy at A-17 Cell about being Placed on level 2.

i) Murphy informed him that he needed to "write to Reed"

ii) After not being satisfied with this response in light of being recently denied to file a grievance by Reed about a similar subject, Plaintiff then wrote to his case manager John Doe 2 requesting a grievance form to initiate the written grievance process.

iii) Around 2/6/23 Case manager John Doe 2 made verbal contact with Plaintiff at A-17 Cell and informed him that "Grievance Process, heres how it works, i'm not going to initiate anything without you first starting a paper trail. You need to write to Reed and get a response, after that come back to me and i'll start the Process."

iv) On 2/7/23 Plaintiff wrote two Bccf-164 forms addressed to Reed, one of a trivial nature regarding his change in diet to a high sodium bag meal and requesting to be given a regular tray. The other was Plaintiff expressing his concerns about being retaliated against by the nursing staff and being Placed on level 2 lock for no reason at all.

v) Plaintiff received an unsatisfactory response to the trivial matter and chose not to pursue a grievance about it.

vi) Plaintiff received no response regarding the serious matter.

vii) Reed thwarts all attempts made by inmates to access the written grievance level regarding complaints that would point out the shortcomings of her administration to those who sit on the Bucks county Prison oversight Board.

f) See attempt and response [IV. §5(c)(i)]

i) The handbook states under section "Abuse of the grievance Procedure" that an inmate may be subject to disciplinary action if he submits multiple requests regarding the same subject.

ii) Plaintiff chose not to attempt to file additional grievances for fear of being issued a misconduct since Reed stated that he was not allowed to file a grievance about anything relating to his medical status.

g) In an attempt to seek relief via an avenue unrelated to the official grievance Procedure, on 2/17/23 and around 3/15/23 Plaintiff mailed his concerns regarding his indefinite segregation, denial of access to the grievance Procedure and deprivation of exercise for all segregated inmates to the Prison oversight Board. (B.C.P.o.B.)

i) On 4/5/23 at 11am Plaintiff sat down with Sara Webster who was conducting an investigation for the BCPoB, he explained to her the Problems detailed in this complaint.

ii) Webster told Plaintiff that she would Present his findings to the B.C.P.o.B and meet with him the next time she visited.

iii) In a final meeting with Webster on 4/14/23 Plaintiff was informed that the B.C.P.o.B. was unwilling to modify the official Policy to remove Plaintiff from his medical lock.

iv) On 4/14/23 Shortly after midnight Plaintiff was informed by SGT. Jane Doe 4 that he could file a grievance by directly mailing the B.c.P.o.B. No two staff members seem to agree how the grievance Procedure actually operates leading inmates through a maze of confusion.

h) Reed has adopted an unofficial Modification of the Official grievance Procedure that grants her arbitration over which complaints reach the written level and which complaints do not. This is done in the following ways:

i) Officers who process grievances are instructed to discard all complaints not filled out on the official form.

ii) Instructing Case managers to withold official forms from inmates unless they produce a written response from her, or if they receive prior authorization via email from her.

iii) Discarding requests that inmates send to her without reply concerning topics she does not approve of but would otherwise be allowed by the official rules.

iv) On 4/14/23 around 8am at G-26 cell Mental health Case worker Jess informed Plaintiff that her entire department was prohibited from having access to the official grievance forms and that she was not certain of how the grievance procedure even operated.

v) Inmate Justin in G-22 cell has been requesting a grievance form from case manager Franceone since December of 2022, as of the filing date of this complaint he has not received an official grievance form.

vi) Around 4/13/23 after Plaintiff was informed by officer J. Kasprzyk that there was no BccF-164 forms on G-module and that Plaintiff should write to the administration if he wanted to file a grievance, Plaintiff responded "That's not what the Policy states" Kasprzyk replied "Yeah it never really worked like that to stop inmates from filing bullshit grievances, things have always been a little backwards here."

F.     If you did not file a grievance:

     1.    If there are any reasons why you did not file a grievance, state them here:

*See Attached*

     2.    If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

G.     Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

*(Note:  You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.  Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☑ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights)

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☑ No

B.    If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below.  *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit
      Plaintiff(s)    _____
      Defendant(s)    _____

2.    Court *(if federal court, name the district; if state court, name the county and State)*

      _____

3.    Docket or index number

      _____

4.    Name of Judge assigned to your case

      _____

5.    Approximate date of filing lawsuit

      _____

6.    Is the case still pending?

      ☐ Yes

      ☐ No

      If no, give the approximate date of disposition.    _____

7.    What was the result of the case?  *(For example:  Was the case dismissed?  Was judgment entered in your favor?  Was the case appealed?)*

      _____

C.    Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

☐ Yes

☑ No

D. If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1. Parties to the previous lawsuit

   Plaintiff(s) _____

   Defendant(s) _____

2. Court *(if federal court, name the district; if state court, name the county and State)*

   _____

3. Docket or index number

   _____

4. Name of Judge assigned to your case

   _____

5. Approximate date of filing lawsuit

   _____

6. Is the case still pending?

   ☐ Yes

   ☐ No

   If no, give the approximate date of disposition _____

7. What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

   _____

34/34

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.      For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:      4/20/23

| | |
|---|---|
| Signature of Plaintiff | |
| Printed Name of Plaintiff | Jeremy Kyle Cannafox |
| Prison Identification # | 130-340 |
| Prison Address | 1730 S. Easton Road |
| | Doylestown       PA      18901 |
| | *City*       *State*       *Zip Code* |

### B.      For Attorneys

Date of signing:  _____

Signature of Attorney       _____

Printed Name of Attorney    _____

Bar Number          _____

Name of Law Firm      _____

Address            _____

_____
*City*            *State*        *Zip Code*

Telephone Number       _____

E-mail Address         _____

Page 11 of 11